J-S74004-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRONE WEARRY | : | |
| | : | |
| Appellant | : | No. 3162 EDA 2016 |

Appeal from the Judgment of Sentence June 14, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0009107-2014

BEFORE: BOWES, J., LAZARUS, J., and RANSOM, J.

MEMORANDUM BY BOWES, J.: **FILED FEBRUARY 07, 2018**

Tyrone Wearry appeals from the June 14, 2016 judgment of sentence of eighteen to sixty months imprisonment followed by three years of probation.[1] The sentence was imposed following his conviction at a bench trial of possession with intent to deliver ("PWID").[2] After thorough review, we affirm.

The facts giving rise to the conviction were summarized by the trial court:

---

[1] Based upon his RRRI eligibility, Appellant's alternative minimum sentence was thirteen and one-half months imprisonment.

[2] Appellant was acquitted of two counts of conspiracy to deliver or possess a controlled substance, and one count each of possession of a controlled substance, possession of a firearm by a prohibited person, and possession of an instrument of crime.

At approximately 8:36 P.M. on October 24, 2012, Philadelphia Police Officer Brian Cherry was conducting surveillance at the 2300 block of North Fawn Street when he saw defendant enter an abandoned lot on the west side of the street. Once defendant entered the lot, Officer Cherry could no longer see him. Defendant remained out of sight for approximately twenty to thirty seconds and then returned to the east side of the block and sat on the steps.

At approximately 8:40 P.M., another male (later identified as co-defendant Andrew Webb) arrived on the scene. Defendant and Webb engaged in a brief conversation and shook hands. Then Webb walked to the same lot that defendant had entered, and remained out of Officer Cherry's view for approximately twenty to thirty seconds. When he came out, he sat next to defendant on the steps.

At 8:54 P.M., an unidentified male approached defendant, had a brief conversation with him, and passed defendant what officer Cherry believed to be United States currency. Defendant walked back to the lot and out of Officer Cherry's view. When he returned, he handed the unknown male unknown items in a closed-fist-to-open-palm transaction. The male then walked southbound on Fawn Street toward Dauphin Street. Officer Cherry called for backup officers to stop the male, but they were unable to do so.

At 9:01 P.M., an unidentified female approached defendant at the same location and had a similar interaction. Following a brief conversation, she handed him an unidentified item. Defendant walked to the vacant lot and out of Officer Cherry's view for twenty to thirty seconds. When he returned, he handed the female an unidentified object in the same manner as he had handed something to the unknown male minutes earlier. After accepting the item, the woman walked southbound on Fawn Street. Backup officers were unable to stop her.

At 9:50 P.M., at Officer Cherry's direction, Officer Wallis stopped Webb and Sergeant Young stopped defendant. Officer Wallis recovered $62.00 and a black Cricket phone from Webb, and Sergeant Young recovered $231.00 and a black Cricket phone from defendant. In the meantime, Officer Victoria Ayers entered the vacant lot that defendant had frequented and saw three rocks assembled in a triangular formation. She removed

the rocks and uncovered a brown Smith and Wesson revolver. Officer Chris Dougherty also entered the lot. Approximately five feet from where Officer Ayers had recovered the revolver, Officer Dougherty recovered an Altoids tin containing twenty-two yellow heat-sealed Ziploc packets of crack cocaine. In the hour and twenty minutes that Officer Cherry had spent surveilling the block, he saw no one but defendant and Webb enter the vacant lot.

Trial Court Opinion, 2/28/17, at 1-3 (citations to record omitted).

After finding Appellant guilty of PWID, the court ordered a presentence investigation and scheduled sentencing for July 2, 2015. Sentencing was continued twice at the request of the defense, and, when Appellant failed to appear at the rescheduled hearing on August 21, 2015, the court revoked his bail and issued a bench warrant for his arrest. On June 14, 2016, following his apprehension, he was sentenced as aforesaid. Appellant's motion for reconsideration of sentence was denied on September 21, 2016, and this appeal timely ensued. Appellant raises three issues for our review:

(a) Did the trial court err when entering verdicts of guilty against the defendant based on evidence at trial that was insufficient to support conviction?

(b) Did the trial court err in entering verdicts of guilty against the weight of the evidence presented at trial?

(c) Did the trial court abuse its discretion at sentencing by not sufficiently considering the mitigating factors presented at the sentencing hearing and not providing any specific factual reasons for the sentence which was imposed?

Appellant's brief at 9.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether the evidence admitted at trial, and all the reasonable

- 3 -

inferences derived therefrom, viewed in favor of the verdict winner, supports the factfinder's finding of all the elements of the offense beyond a reasonable doubt. ***Commonwealth v. Cash***, 137 A.3d 1262, 1269 (Pa. 2016). "[W]holly circumstantial evidence" can be used to meet the Commonwealth's burden. ***Commonwealth v. Antidormi***, 84 A.3d 736, 756 (Pa.Super. 2014). "Unless the evidence is 'so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances,'" we should not disturb the verdict on appeal. ***Commonwealth v. Lee***, 956 A.2d 1024, 1027 (Pa.Super. 2008) (quoting ***Commonwealth v. Davis***, 799 A.2d 860, 866 (Pa.Super. 2002).

Appellant contends that the evidence herein shows at most, "unknown undisclosed exchanges between Appellant and other unrecognized individuals." Appellant's brief at 15. He maintains that there were no tips provided to police, that the police officer was inexperienced, and that the officer did not demonstrate familiarity with the area. Appellant suggests that a "commercial transaction . . . between citizens on a street . . . does not give rise to probable cause to even arrest." ***Id***. The only evidence introduced, according to Appellant, was that "Officer Cherry saw Appellant go to an alley, come back, shake hands with unknown people, go to the alley, return to the hand shakers, and exchange unknown item/items with them." ***Id***. at 16.

The Commonwealth counters that, police had the area under surveillance for narcotics, Officer Cherry observed Appellant delivering what he believed to be drugs to his buyers, and police found crack cocaine in the area Appellant was frequenting after he was given money. The other alleged deficiencies, the Commonwealth maintains, are not elements of PWID.

Appellant was charged with PWID pursuant to 35 P.S. § 780-113, which provides:

> (a) The following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> . . .
>
> (30) Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 P.S. § 780-113(a)(30).

In **Commonwealth v. Griffin**, 804 A.2d 1, 15 (Pa.Super. 2002), this Court explained that "to sustain a conviction [for PWID,] the Commonwealth must prove beyond a reasonable doubt only that, on a specific occasion, the defendant possessed a controlled substance he was not licensed to possess, and that he did so under circumstances demonstrating an intent to deliver that substance." The intent to deliver can be inferred from the facts and circumstances. **Commonwealth v. Daniels**, 999 A.2d 590, 595 (Pa.Super. 2010). The particular method of packaging, the form and amount of the

- 5 -

drug, and the behavior of the defendant are relevant factors in making that determination.

The possession element is easily satisfied if the controlled substance is found on the defendant's person. Where that is not the case, the Commonwealth must prove that the defendant constructively possessed the controlled substance, *i.e.*, that he had the "power to control the contraband and the intent to exercise that control." **Commonwealth v. Hopkins**, 67 A.3d 817, 820 (Pa.Super 2013). The intent to control may be inferred from the totality of the circumstances. **Id**. Delivery is "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 P.S. § 780-102. To prove that a delivery occurred, the Commonwealth must prove that the defendant knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so. **Commonwealth v. Murphy**, 844 A.2d 1228, 1234 (Pa. 2004).

Drawing all inferences in favor of the Commonwealth as the law requires, the evidence was sufficient to sustain Appellant's conviction of PWID. The trial court, sitting as the factfinder, heard evidence from Officer Cherry that he was conducting plainclothes surveillance of the 2300 block of Fawn Street in Philadelphia on the date in question. He had several backup officers who were prepared to make the arrests and apprehend buyers.

Officers Victoria Ayres and Officer Chris Dougherty testified at trial that their responsibilities included inspecting the location when notified by Officer Cherry.

Officer Cherry observed Appellant enter an abandoned lot, remain there for twenty to thirty seconds, and then sit down on steps adjacent to a public sidewalk. Within minutes, Appellant was joined by co-defendant Webb. Webb also entered the lot and returned to Appellant's location within a short time. Over the next one-half hour, Appellant had brief conversations with two separate individuals, during which the individuals handed him United States currency. Each time, Appellant thereafter walked to the lot, remained there briefly, and returned to the area of the steps. Appellant used a palm-to-palm method to deliver a small object to each individual. During the ninety-minute surveillance, Officer Cherry did not observe anyone other than Appellant and Webb enter or exit the vacant lot.

Officers Ayres and Dougherty were located in an unmarked police vehicle when, at approximately 9:50 P.M., they received flash information from Officer Cherry directing them to the vacant lot. Officer Ayres noticed three rocks unnaturally stacked in the shape of a tepee. When she disturbed the rocks, she uncovered a brown revolver. Within five feet of the weapon, Officer Dougherty located an Altoid tin that contained twenty-two heat-sealed Ziploc packets of crack cocaine.

The trial court herein inferred, from the totality of the circumstances, that Appellant entered the lot initially to place the Altoid tin containing his cache of crack cocaine, and that he subsequently returned there to retrieve individual packets of the controlled substance, which he then delivered to his buyers. Appellant was apprehended while he was still in proximity to the controlled substances. We upheld the conviction for PWID in *Lee*, *supra*, based on similar facts. Police officers observed as Lee engaged in two hand-to-hand transactions in which money was exchanged for small items that he retrieved from a cache in a nearby vacant lot. Following Lee's arrest, police located forty-nine pink-tinted Ziploc packets of crack cocaine in the adjacent vacant lot where the transactions took place. In that case, the Commonwealth also introduced proof that the packet recovered from the first buyer matched the packets discovered in the vacant lot.

The inferences drawn by the trial court were reasonable, given the circumstances. Appellant had the power to control the drugs and the intent to exercise it. The payment of cash, Appellant's repetitive behavior of returning to the lot where the drugs were concealed, and the palm-to-palm exchange of a small object, together with the amount of the drugs and the way they were packaged, established the requisite possession and intent to deliver beyond a reasonable doubt. While the buyers herein eluded apprehension, we do not find the evidence so weak as to be insufficient to sustain the PWID conviction.

Appellant's second issue is a challenge to the weight of the evidence. The Commonwealth maintains that the issue is waived because Appellant did not preserve it in the trial court or raise the issue in his Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

A motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016); *Commonwealth v. Cousar*, 928 A.2d 1025, 1035-36 (Pa. 2007). The court should award a new trial "when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013).

The function of this Court "on appeal is to review the trial court's exercise of its discretion." *Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009). It is not our role to reweigh the evidence. *Id*. We can reverse the denial of a new trial on this ground only if the trial court "palpably abused its discretion in ruling on the weight claim." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003). Hence, "a trial court's denial of a weight claim is the least assailable of its rulings." *Commonwealth v. Lofton*, 57 A.3d 1270, 1273 (Pa.Super. 2012) (quoting in part *Commonwealth v. Diggs*, 949 A.2d 873, 880 (Pa. 2008)).

A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing.  Pa.R.Crim.P. 607; **Commonwealth v. Priest**, 18 A.3d 1235, 1239 (Pa.Super. 2011).  Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. **Commonwealth v. Sherwood**, 982 A.2d 483, 494 (Pa. 2009).  Appellant did not file a motion seeking a new trial based on the weight of the evidence prior to or after sentencing, or orally at sentencing.  Thus, his weight of the evidence claim is waived.

Appellant's final issue involves the discretionary aspects of his sentence.  He alleges that the trial court ignored mitigating factors and failed to state its reasons on the record for imposing an aggravated range sentence.  The law is well settled that, "with regard to the discretionary aspects of sentencing, there is no automatic right to appeal." **Antidormi**, **supra** at 759 (quoting **Commonwealth v. Austin**, 66 A.3d 798, 807-08 (Pa.Super. 2013).  Before we will reach the merits of a discretionary sentencing challenge, the appellant must satisfy four prerequisites: (1) the appeal must be timely; (2) the issue must have been preserved; (3) the appellant's brief must include a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence pursuant to Pa.R.A.P. 2119(f); and (4) the concise statement must present a

substantial question that the sentence is inappropriate under the sentencing code. *Austin*, *supra*.

As the Commonwealth correctly points out, Appellant failed to satisfy three of the four prerequisites for review. He did not file a timely post-sentence motion preserving his sentencing challenge, failed to identify the issue in his Rule 1925(b) concise statement, and neglected to include a Pa.R.A.P. 2119(f) concise statement in his appellate brief establishing that his claim raises a substantial question that his sentence was inappropriate under the Sentencing Code or violated the fundamental norms underlying sentencing. Hence, the issue is waived.[3] Finding no basis for relief, we affirm.[4]

---

[3] If the only defect herein was Appellant's failure to include a Rule 2119(f) concise statement in his brief, and the Commonwealth had not objected, we could entertain the claim. *See Commonwealth v. Foster*, 960 A.2d 160 (Pa.Super. 2008) (discretionary sentencing claim waived if appellant does not include Rule 2119(f) statement in his brief and the opposing party objects to its absence); *accord Commonwealth v. Shugars,* 895 A.2d 1270 (Pa.Super. 2006). Such was not the case herein.

[4] Prior to imposing this **standard range** sentence, the court stated on the record that it had

> considered the general principle that the sentence imposed should call for confinement consistent with the protection of the public, the gravity of the offense as it relates to the impact on the community and the rehabilitative needs of the defendant. The Court has considered the arguments of counsel, the defendant's presentence investigation, the letter from the defendant's sister, Christine Wearry, the letter from Tanya

*(Footnote Continued Next Page)*

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/7/2018

*(Footnote Continued)* ————————

Wearry-Gravitt . . . and the testimony from the defendant's sister, Christine Wearry, and the defendant's allocution.

N.T. Sentencing Vol. I, 6/14/16, at 16-17.